# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HICKORY FARMS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 05 C 4541 |
| ) | |
| **SNACKMASTERS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Hickory Farms, Inc., owner of the registered trademark BEEF STICK and former owner of the trademark TURKEY STICK, sued Snackmasters, Inc., for trademark infringement, unfair competition, and dilution under the Lanham Act and has also asserted parallel state law claims arising out of Snackmasters' use of these terms for its products. Snackmasters counterclaimed for a declaratory judgment that both marks are generic and for cancellation of the registered BEEF STICK trademark. Snackmasters has moved for summary judgment on all counts of its counterclaim and Hickory Farms' complaint. Snackmasters contends that it is entitled to judgment as a matter of law because both marks are generic. For the following reasons, the Court grants Snackmasters' motion.

## Facts

For the purpose of defendant's summary judgment motion, the Court views the evidence in the light most favorable to the plaintiff, drawing reasonable inferences in its favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

Hickory Farms and Snackmasters both sell meat products that they label as beef stick and

turkey stick. Hickory Farms is a nationwide seller and marketer of food and gift items, including beef and cheese products. Hickory Farms contracts with various manufacturers to provide products that Hickory Farms then markets under its brand. The Hickory Farms beef stick and turkey stick are made exclusively from beef and turkey, respectively. The Hickory Farms brand name features prominently on its packages of beef and turkey sticks.

Hickory Farms has a registered trademark in its brand name. It also owns registration number 875,260, issued on August 19, 1969, for the mark BEEF STICK with "beef" disclaimed.[1] Hickory Farms contends that BEEF STICK achieved "incontestable" registration status in 1975.[2] Previously, Hickory Farms owned registration number 1,814,938 for the mark HICKORY FARMS TURKEY STICK with "turkey" disclaimed. The registration has since lapsed. Hickory Farms re-applied, but Snackmasters filed an opposition to the registration with the PTO. As a result of Snackmasters' objection, the PTO did not re-register the trademark for the term turkey stick. *See* Pl. Exs. 15-16.

---

[1] The Patent and Trademark Office (PTO) may ask an applicant to disclaim a portion of a term seeking to be trademarked if a part of the term is generic. *See* 15 U.S.C. § 1056.

[2] For a mark to achieve incontestable status, section 15 of the Lanham Act requires a trademark owner to submit an affidavit that "state[s] that the mark had been registered and in continuous use for five consecutive years, that there had been no final adverse decision to petitioner's claim of ownership or right to registration, and that no proceedings involving such rights were pending." *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 191-92 (1985); *see also* 15 U.S.C. § 1065. Hickory Farms' evidence of incontestability consists of its PTO registration on August 19, 1969 and its renewal of the mark on August 19, 1999. *See* Pl. Ex. 15.
   Hickory Farms relies on the length of time it has owned BEEF STICK for the mark's incontestable status. Hickory Farms does not provide documentation from the PTO that it submitted an affidavit, as required under 15 U.S.C. § 1065 to achieve incontestable status, nor does it offer evidence that the mark received the imprimatur of incontestable status from the PTO. Thus, for the purposes of summary judgment, the Court will assume that BEEF STICK is, in fact, an incontestable mark.

Snackmasters has a registered trademark in its brand name. Snackmasters has manufactured and sold meat snacks since 1982, when its brand of turkey jerky was introduced. In 2002 or 2003, Snackmasters introduced its own beef stick and turkey stick products. The Snackmasters beef stick and turkey stick are made of certified natural beef meat and range-grown turkey meat, respectively, with seasonings and spices added to create pepperoni or teriyaki flavors. The meats are pre-cooked and then stuffed into an elongated collagen casing to create a meat product in the form of a stick. Snackmasters uses its brand name and the terms beef stick or turkey stick on its packaging and promotional materials for these products. Snackmasters attests that its use of the terms beef stick and turkey stick is consistent with its use of other generic terminology on its product packaging, such as the terms beef jerky, turkey jerky, salmon jerky, and ahi jerky.[3]

Many other companies, such as Old Wisconsin, Klement's, Trader Joe's, Flat Iron, Fraboni, Bridgford, Jimmy Dean, Big Joe's, Slim Jim, Berlin Farms, Debbi D's, Tombstone, The Swiss Colony, and the Wisconsin Cheeseman, among others, also use the terms beef stick and turkey stick to refer to their meat products that are packaged in stick form. *See* Def. Exs. 22-77, 101-285. Hickory Farms acknowledges this. *See* Pl. Resp. to Counterclaim, Def. App. 1, Ex. I.

**Discussion**

---

[3] Hickory Farms argues that Snackmasters tried to trademark the term turkey jerky, thereby contradicting its position in this case regarding the trademarking of descriptive goods. Snackmasters explained in its reply that the trademark it sought, and received, was for trademark protection in the graphic symbol it used for its turkey jerky product. Based on the PTO registration, the Court accepts Snackmasters' reading of its trademark protection in the turkey jerky symbol. *See* Def. Exs. J & 501.

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

The law classifies trademarks into five categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). The level of protection accorded to a mark depends on its distinctiveness. *Mil-Mar Shoe Co., Inc. v. Shonar Corp.*, 75 F.3d 1153, 1156-57 (7th Cir. 1996). A descriptive mark, for example, is one that merely describes the ingredients, qualities, or characteristics of a good. Such marks typically are not protectable as trademarks. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). To prove that a descriptive mark is protectable, a plaintiff must demonstrate that the mark has achieved "secondary meaning" in the relevant market – in other words, that it has acquired distinctiveness. *Two Pesos*, 505 U.S. at 769; *Mil-Mar*, 75 F.3d at 1156. By contrast, a generic term can receive no trademark protection. *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 193-94 (1985).

**1.    Burden of proof**

Snackmasters argues that the terms beef stick and turkey stick are generic and thus are unprotectable under the Lanham Act. Because Hickory Farms does not own a registration in the term turkey stick, it bears the burden of proof to establish that the mark is valid – in this case,

4

that it is not an unprotectable generic mark. *See Mil-Mar*, 75 F.3d at 1156.

The burden is different in the case of a registered mark. In cases involving a registered mark that has not achieved incontestability, there is a presumption of non-genericness. *Liquid Controls*, 802 F.2d at 937. This presumption, however, evaporates when the opposing party introduces evidence of genericness, leaving the trademark holder with the ultimate burden of persuasion on the issue of validity. *Id.* at 936-37.

When an incontestable mark is challenged as generic, the alleged infringer may bear the burden of persuasion on that issue. The Ninth Circuit has so held. *See Reno Air-Racing Ass'n, Inc. v. Jerry McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006) ("[R]egistered marks are endowed with a strong presumption of validity, and a defendant has the burden of showing genericness by a preponderance of the evidence."). *See also KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 408 F.3d 596, 603 (9th Cir. 2005) (holding that even an incontestable mark is subject to certain defenses or defects, such as genericness). The law in the Seventh Circuit is less clear. In *TE-TA-MA Truth Foundation - Family of URI, Inc. v. World Church of the Creator*, 297 F.3d 662 (7th Cir. 2002), the court suggested that incontestable marks give the trademark holder only a "bursting bubble" presumption of validity, equivalent to the presumption that applies to marks that have not achieved incontestable status. *See id.* at 665. But it is not entirely clear from the court's decision whether it intended to decide the issue definitively.

A legal rule that makes contestable and incontestable marks essentially the same in this regard is arguably at odds with Congress' statutory scheme. *Compare* 15 U.S.C. § 1115(a) (registered but incontestable mark is "prima facie evidence of . . . validity") *with id.* § 1115(b) (incontestable mark is "conclusive evidence of 'validity,'" subject to certain exceptions). But

5

although the Court finds persuasive the Ninth Circuit's reasoning in *KP Permanent Make-Up*, we need not resolve the issue in this case. For purposes of Snackmasters' motion, the Court will assume that Snackmasters bears the burden of proving BEEF STICK's genericness by a preponderance of the evidence.

**2.     Genericness**

A generic term is one that is commonly used to name a type or kind of good. *Mil-Mar*, 75 F.3d at 1157; *Liquid Controls*, 802 F.2d at 936; *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977). A trademarked term becomes generic when it "has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Ty, Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir. 2003). As the Seventh Circuit has noted,

> [t]o allow a firm to use as a trademark a generic word, . . . would make it difficult for competitors to market their own brands of the same product. Imagine being forbidden to describe a Chevrolet as a "car" or an "automobile" because Ford or Chrysler or Volvo had trademarked these generic words.

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). Terms become generic not because manufacturers lack creativeness in naming their products, but because no other words have emerged as synonyms for certain types of goods, thus making it "difficult for a seller forbidden to use one of the trademarked words or phrases to communicate effectively with customers." *Ty*, 353 F.3d at 532.

The Court can consider several factors when determining whether a mark is generic, including competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys. 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:13 (4th ed. 2006).

The evidence presented by Snackmasters consists largely of competitors' and news media usage of the terms beef stick and turkey stick. Specifically, Snackmasters has identified over one hundred companies that use the terms beef stick or turkey stick on their products of beef or turkey packaged in stick form. *See* Def. Exs. 34, 36-38, 40, 45, 59, 67-77, 101-285. Snackmasters also submitted several newspaper articles that use the term beef stick to describe a kind of food item. *See* Def. Exs. 58, 415, 418-19, 421, 429. The news articles did not reference any producer in particular but rather use the term beef stick as a generic descriptor of the food item. *Id.*

In its response to Snackmasters' motion, Hickory Farms argues that despite the stacks of paper Snackmasters has submitted, defendant lacks support for its claim of genericness because it did not offer any consumer surveys and has a relatively small sales volume as compared to that of Hickory Farms. Hickory Farms also claims that the terms cannot be generic because it has spent a significant amount of money on marketing its beef and turkey stick products through the years and has maintained the BEEF STICK mark since 1969.

At the outset, the Court notes that a defendant does not need to conduct a consumer survey to show a term is generic. Rather, this is simply one of several factors that may be considered. *See* 2 McCarthy, *supra,* § 12:13. Moreover, the Seventh Circuit has declared terms generic based on little more than a term's common meaning in a standard dictionary. *See generally Mil-Mar*, 75 F.3d 1153; *Liquid Controls*, 802 F.2d 934; *Miller Brewing*, 561 F.2d 75. If anything, a consumer survey may have been helpful for Hickory Farms to show the existence of a genuine issue of material fact on the issue of genericness. *See Ty*, 353 F.3d at 530.

Hickory Farms seems to rely on its evidence of comparative sales volume to show

7

consumer association of BEEF STICK and turkey stick with the Hickory Farms brand. As the Court just suggested, evidence of consumer association, such as a consumer survey that shows what "primary significance" the terms have to the consuming public, could establish a genuine issue of material fact as to the protectable nature of the terms. *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118-19 (1938); *Ty*, 353 F.3d at 530-31. But Hickory Farms has provided no such evidence. Without more, the Court cannot make the leap that an analysis of each party's share of the beef and turkey stick market amounts to evidence of the terms' primary significance to the consuming public. In short, this evidence is insufficient to show the existence of a genuine issue of material fact.

Hickory Farms argues that its substantial investment in its BEEF STICK and turkey stick marketing campaign should factor into the Court's analysis of whether the terms are generic. This emphasis, however, is misplaced. The Seventh Circuit has held that "'a generic term . . . may not be exclusively appropriated as a trademark, regardless of the length of time it may have been used by a single distributor at the consumer level and despite whatever promotional effort he may have expended to exploit it.'" *Mil-Mar*, 75 F.3d at 1161-62 (quoting *Henry Heide, Inc. v. George Ziegler Co.*, 354 F.2d 574, 576 (7th Cir. 1965)).

Hickory Farms also argues that in determining whether beef stick and turkey stick are generic terms, the Court must consider these terms in their entirety, without consideration of the separate words that make up the phrases. Hickory Farms does concede, however, that it was required by the PTO to disclaim the words "beef" and "turkey" because of the generic quality of those words. This concession suggests that Hickory Farms understands that at least a part of the terms beef stick and turkey stick is generic. As the Seventh Circuit explained, a Court may

8

examine the meaning of a term's component parts:

> Certain terms may connote more than the sum of their parts and we must take care to decide the genericness of these terms by looking to the whole. For example, the mark "sugar & spice" on bakery products was held to be not merely descriptive, even though both "sugar" and "spice" are descriptive of the products. . . . Other composite terms are nothing more than the sum of their parts, such as "multistate bar examination" and "light beer." . . . . In any case, we do not believe that the principle that the validity of a mark is to be determined by looking at the mark as a whole precludes a court from examining the meanings of the component parts in determining the meaning of the mark as a whole.

*Liquid Controls*, 802 F.2d at 938 (citation omitted).

In determining whether a term is generic, the Court may look to the dictionary or other places of common usage. *See Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171-72 (7th Cir. 1996); *Liquid Controls*, 802 F.2d at 937-38; *Miller Brewing Co.*, 561 F.2d at 80. One of the definitions for the noun "stick," as defined by Webster's Third New International Dictionary, is "something prepared (as by cutting, molding, rolling) in a relatively long and slender often cylindrical form (as for convenience in handling, ease of application or consumption)." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2240 (1993 ed.).

Snackmasters argues that similar to the terms multistate bar examination and light beer, beef stick and turkey stick are nothing more than the sum of their parts and are therefore generic. *See Nat'l Conf. of Bar Examiners v. Multistate Legal Studies*, 629 F.2d 478 (7th Cir. 1982). The Court agrees. The terms beef stick and turkey stick are generic because they name a class or kind of goods – beef or turkey prepared and packaged in stick form – rather than serving as an identifier of the source of those goods. In fact, it is difficult to imagine what else a seller would call a beef or turkey product packaged in stick form. Hickory Farms has failed to identify a genuine issue of material fact regarding the claimed nongeneric nature of the terms beef stick or turkey stick.

9

In sum, Snackmasters has carried its burden of proving that the term beef stick is a nonprotectable generic term, and Hickory Farms has failed to carry its burden of proving that the term turkey stick is a protectable mark. There is no genuine issue of material fact on either of these points. Snackmasters is entitled to judgment as a matter of law.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment on plaintiff's complaint and defendant's counterclaim. The Clerk is directed to enter judgment in favor of the defendant on plaintiff's complaint and on defendant's counterclaim [docket no. 71], declaring the terms beef stick and turkey stick to be generic terms, and canceling plaintiff's Trademark Registration No. 875,260. The Clerk shall certify this order to the Director of the United States Patent and Trademark Office for entry upon its records.

_____
        MATTHEW F. KENNELLY
         United States District Judge

Date:   March 8, 2007