IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HICKORY FARMS, INC., | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. 05 C 4541 ) |
| SNACKMASTERS, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Hickory Farms, Inc. sued Snackmasters, Inc. for trademark infringement, unfair competition, and dilution under the Lanham Act and parallel state law claims, all arising out of Snackmasters' use of the terms "beef stick" and "turkey stick" for its products. Snackmasters counterclaimed, seeking a declaratory judgment that both marks were generic and cancellation of Hickory Farms' registration of the BEEF STICK trademark. Snackmasters moved for summary judgment on its counterclaim and Hickory Farms' complaint. On March 8, 2007, the Court granted Snackmasters' motion, concluded that beef stick and turkey stick are generic terms, and directed the cancellation of Hickory Farms' BEEF STICK registration. *See Hickory Farms v. Snackmasters*, No. 05 C 4541, 2007 WL 772919 (N.D. Ill. Mar. 8, 2007).

Hickory Farms has moved for reconsideration. It argues that it should have been permitted to do a consumer survey before responding to Snackmasters' motion; the Court failed to properly consider certain evidence it offered; and the Court gave improper consideration to certain evidence offered by Snackmasters. The Court assumes familiarity with the March 8,

2007 ruling and reiterates only those portions relevant to this reconsideration.

1.  **Standard of Review**

When a motion to alter or amend a judgment is filed within ten days after entry of judgment, the Court deems it filed under Rule 59(e), "even if, as in this case, the motion is not labeled a Rule 59(e) motion and again, as in this case, does not say 'alter or amend' (the language of Rule 59(e)) but instead uses a synonym, such as 'vacate' or 'reconsider.'" *Borrero v. City of Chicago*, 456 F.3d 698, 699 (7th Cir. 2006); *see also* FED. R. CIV. P. 59(e). A court may grant a motion to amend a judgment if there is newly discovered evidence or an intervening change in the law or if the judgment reflects a manifest error of the law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotation marks and citation omitted). Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something; it is an inappropriate vehicle for asserting arguments that were not made by a party to which the arguments were then available. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

2.  **Rule 56(f) discovery**

Hickory Farms first contends that the Court should have deferred ruling on Snackmasters' summary judgment motion so that Hickory Farms could conduct a consumer survey and use it as part of its response to the motion. Hickory Farms first raised this issue in a submission pursuant to Federal Rule of Civil Procedure 56(f), filed on August 23, 2006, after Snackmasters had moved for summary judgment. In that submission, Hickory Farms identified some discovery it

2

wished to conduct, and then said the following:

> With respect to Snackmasters' claim in its Motion for Summary Judgment that Hickory Farms' trademarks BEEF STICK and TURKEY STICK are generic, we note that Snackmasters has failed to submit any survey evidence in support of this claim. Hickory Farms asks the court for leave to conduct a survey with regard to public perception of Hickory Farms' trademarks BEEF STICK and TURKEY STICK. *Since Snackmasters has failed to support its motion for summary judgment with such evidence, Hickory Farms will not seek to delay the briefing of this matter with its own survey at this time. Rather, Hickory Farms makes this request so as not to waive its right to conduct such a survey after, and in the event that, Snackmasters' Motion for Summary Judgment is denied.*

Pl.'s Statement and Request Under Rule 56(f) at 2-3 (emphasis added). In an affidavit submitted in support of the request, Hickory Farms' counsel stated that

> [i]f the Court considers public perception of the BEEF STICK and TURKEY STICK marks to be germane to the resolution of Snackmasters' motion for summary judgment . . . or on issues relating to the resolution of Defendant's claims of genericness, then Hickory Farms wishes to preserve the ability to present evidence of public perception with a survey relating to those issues.

Affid. of Edward Chalfie ¶ 4. Counsel stated that a survey might take months to complete and ought to be done after fact discovery was completed. *Id.*

The Court assessed Hickory Farms' Rule 56(f) submission and concluded, given (among other things) Snackmasters' limitation of its summary judgment request to the issue of genericness, that Hickory Farms did not require the additional discovery it sought in order to respond to Snackmasters' motion. *See* Transcript, Sept. 14, 2006 at 2-4. The Court made it clear to Hickory Farms' counsel, however, that if, at the time it filed its response to the motion, Hickory Farms truly believed that it required additional discovery to file a proper response, it should so state in the response. *Id.* at 3-4.

In its later-filed response to Snackmasters' motion, Hickory Farms gave no hint that it

3

required anything further, by way of discovery or otherwise, to respond properly to the motion. Specifically, it did not repeat its request for the opportunity to conduct a consumer survey.

In ruling on the motion, the Court rejected Hickory Farms' argument that Snackmasters could not get summary judgment without submitting a survey. The Court also stated, in passing, that a survey theoretically might have been helpful to Hickory Farms. *See Hickory Farms*, 2007 WL 772919, at *4. This is, presumably, what has prompted Hickory Farms' argument that the Court should grant reconsideration because it erred in failing to allow it to submit a survey before granting summary judgment.

Hickory Farms' argument borders on the frivolous. First of all, in its Rule 56(f) submission, quoted earlier, Hickory Farms expressly disavowed any desire to conduct a survey before responding to Snackmasters' motion. Specifically, Hickory Farms stated that it would not "seek to delay the briefing of this matter with its own survey" and that it was making a record of its desire to do a survey only "after, and in the event that, Snackmasters' Motion for Summary Judgment is denied." Because the Court granted Snackmasters' motion, the trigger for Hickory Farms' putative survey was never pulled. Hickory Farms cannot now seek reconsideration of the granting of summary judgment on a ground that it expressly disclaimed before the Court ruled.

Second, after the Court rejected its Rule 56(f) submission, Hickory Farms had the opportunity to raise the issue again in its response to the motion for summary judgment, but it remained silent. Rule 56(f) is not appropriately used as a means of obtaining a do-over that relieves a party from the consequences of voluntary choices it made in responding to a summary judgment motion. Having heard no request from Hickory Farms to put on the brakes to permit a survey to be completed, the Court was not required to halt consideration of Snackmasters'

4

motion and urge Hickory Farms to submit something more. *See Comm. for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir. 1992).

Third, there was nothing to prevent Hickory Farms from conducting a survey, on its own, in the fourteen months between the date it filed this action (or even before!) and the date it filed its response to Snackmasters' summary judgment motion. Rule 56(f) cannot be used as a device to buy additional time for a party that has not been diligent. *See Todd v. Merrell Dow Pharms., Inc.,* 942 F.2d 1173, 1178 (7th Cir. 1991). In its Rule 56(f) submission, Hickory Farms made only a conclusory statement that consumer surveys ordinarily are conducted at the close of fact discovery. It did not identify then, and has not identified now, anything it lacked that was necessary to enable it to conduct a survey.

### 3. Hickory Farms' advertising investments and market share

Hickory Farms argues that the Court misapprehended certain evidence it offered in its response to Snackmasters' motion for summary judgment. Specifically, Hickory Farms highlights affidavits from a number of current and former employees describing the company's sizeable promotional efforts and its sales percentage in the beef and turkey stick markets.[1] Certain of the affidavits also include a statement of the affiant's belief that "Beef Stick" and "Turkey Stick" were recognizable trademarks to the consuming public. Hickory Farms contends that this evidence was sufficient to allow it to avoid summary judgment.

The affidavits reflect that Hickory Farms has engaged in sizeable promotional efforts and

---

[1] The Court notes that opinion evidence of a plaintiff's employees has been deemed to have "little probative value regarding the assessment of consumer perceptions . . . . [because] trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account." *Self-Realization Fellowship v. Amanda Church,* 59 F.3d 902, 910 (9th Cir. 1995).

5

has a significant percentage of the sales of beef stick and turkey stick products. The Seventh Circuit has long held, however, that a company's marketing and advertising investments cannot make a generic term less generic. *See Mil-Mar Shoe Co., Inc. v. Shonac Corp*, 75 F.3d 1153, 1161-62 (7th Cir. 1996) ("'a generic term . . . may not be exclusively appropriated as a trademark, regardless of the length of time it may have been used by a single distributor at the consumer level and despite whatever promotional effort he may have expended to exploit it.'" (quoting *Henry Heide, Inc. v. George Ziegler Co.*, 354 F.2d 574, 576 (7th Cir. 1965))); *Blau Plumbing Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). Notably, even when faced with survey evidence indicating that beer consumers associated the registered trademark "light" with Miller Brewing Company's product, the Seventh Circuit illustrated that money pumped into advertising a generic term cannot make it ungeneric:

> The survey evidence could have only two purposes: to prove the meaning of the word "light" or to prove that consumers have come to associate that word with Miller's product. As for the first purpose, the meaning of a familiar English word of Anglo-Saxon heritage can hardly be established by a survey of 988 beer drinkers who had endured long exposure to Miller's advertising of the word in connection with the Miller name. When Judge Learned Hand said that whether a word is generic depends on what "buyers understand by the word," *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921), he was referring to a coined word [aspirin] for a commercial product that was alleged to have become generic through common usage. He was not suggesting that the meaning of a familiar, basic word in the English vocabulary can depend on associations the word brings to consumers as a result of advertising.

*Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995 (7th Cir. 1979).

The Court did not misunderstand or overlook Hickory Farms' evidence in this regard. In the Court's summary judgment ruling, it addressed the very same argument that Hickory Farms now reasserts. Hickory Farms is essentially rehashing its prior unavailing argument, which is not a proper basis for reconsideration. Reconsideration is appropriate only when "the Court has

patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191. In any event, Hickory Farms has failed to offer any persuasive authority, either now or in its previously filed response to Snackmasters' summary judgment motion, that market share and advertising have any bearing on determination of a mark's genericness.

The Court may have overstated things somewhat when it stated, "[i]n fact, it is difficult to imagine what else a seller would call a beef or turkey product packaged in stick form." *Hickory Farms*, 2007 WL 772919, at *5. As Hickory Farms points out, "summer sausage" is another possible generic term for this category of food items. A summer sausage is "a sausage that has been dry-cured, smoked, and hardened and that keeps well without refrigeration." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2290 (1993 ed.). But the fact that there is another generic term for a product does not mean that a particular term cannot also be generic. For example, the fact that one can also call a pancake a hot cake or a flapjack or can call a hot dog a weiner does not make either alternative any less generic. In short, the existence of other generic synonyms does not make a generic term any more capable of trademark protection. *See Blau Plumbing*, 781 F.2d at 609; *Miller Brewing Co.*, 605 F.2d at 995. *See generally* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:9, at 12-27 - 12-29 (4th ed. 2007).

In this regard, Hickory Farms highlights the Court's reliance on *Ty, Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003), in which the Seventh Circuit explained that a trademarked term becomes generic when "it has gone so far toward becoming the exclusive descriptor of the

product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Id.* at 531. The Seventh Circuit's decision does not indicate, however, that the existence of other generic descriptors defeats a contention that a particular term is generic. Rather, the discussion in *Ty* concerned how a term that was not generic when it was introduced to the marketplace (such as cellophane, escalator, thermos, and yo-yo) may become generic over time because of how consumers come to view the coined term. *Id.* at 532.

### 4.  Defendant's evidence of third party use

Hickory Farms next argues that the Court misapprehended the significance of Snackmasters' evidence of media and competitors' use of the terms beef stick and turkey stick. Hickory Farms argues that Snackmasters' evidence of third party use is either outdated (in that the third party users discontinued their use of the terms) or is relatively recent and therefore inconsequential. Hickory Farms also contends that Snackmasters' evidence of third party use consisted mainly of website printouts, which Hickory Farms says are effectively meaningless.[2]

In support of its motion for summary judgment, Snackmasters submitted a large quantity of documents indicating that competitors frequently use and have used the terms beef stick and turkey stick to describe their dried meat and turkey products packaged and sold in stick form. The documents consisted of website printouts from the Internet and copies of competitors' labels, as well as a box filled with competitors' beef stick and turkey stick products, labeled as such.

At oral argument on the motion for reconsideration, Hickory Farms claimed that

---

[2] The Court notes that not all the evidence that Snackmasters submitted came from websites.

8

Snackmasters' evidence is not what it purports to be. Specifically, Hickory Farms argued that the examples of third parties using the terms do not amount to one hundred instances of third party use but rather boil down to only nine current uses of the terms. Hickory Farms contends it pointed this fact out to the Court at summary judgment briefing, but it did not direct the Court to where it did so, nor has the Court found it on its own search of the record. The Court notes that reconsideration is not appropriate for new arguments that were not made by a party to which the arguments were then available. *See Bank of Waunakee*, 906 F.2d at 1191. Nevertheless, Snackmasters conceded at oral argument on the motion for reconsideration that some competitors had discontinued their use of the terms, while arguing that its evidence showed the span and extent of competitors' use of the terms. Further, Snackmasters argued, Hickory Farms' own files demonstrate that the company allowed competitors to use the terms and that it was not vigilant in enforcing its rights in the registered marks.

Though some of the competitors Snackmasters' cites as third party users acquiesced to Hickory Farms' cease and desist letters, a company's decision to acquiesce to a cease and desist letter may reflect only its analysis of the economics of litigating the dispute versus giving in. Moreover, as reflected in the briefs on the motion for summary judgment and the motion for reconsideration, Hickory Farms has had a checkered history of enforcing its rights in the marks at issue.[3] In any event, as other courts have held, once a "mark has 'entered the public domain beyond recall,' policing is of no consequence to a resolution of whether a mark is generic." *See*

---

[3] The Seventh Circuit has stated that "[a] serious trademark holder is assiduous in endeavoring to convince dictionary editors, magazine and newspaper editors, journalists and columnists, judges, and other lexicographically influential persons to avoid using his trademark to denote anything other than the trademarked good or service." *Illinois High School Association v. GTE Vantage, Inc.*, 99 F.3d 244, 246 (7th Cir. 1996).

*The Murphy Door Bed Co. v. Interior Sleep Systems Inc.*, 874 F.2d 95, 101 (2d Cir. 1989).

Hickory Farms argues that Snackmasters' website-related evidence is worth "nil" given recent decisions in this district questioning the reliability of Internet evidence in general. Yet this case is distinguishable from the cases Hickory Farms cites.

In this regard, Hickory Farms cites *McKillip Inds., Inc. v. Integrated Label Corp.*, 477 F. Supp. 2d 928 (N.D. Ill. 2006), which involved a claim for a declaratory judgment that the terms "integrated labels," "integrated forms" and "integrated cards" are generic terms. Judge Bucklo concluded that there were genuine issues of fact on whether the terms were generic and therefore denied the plaintiff's motion for summary judgment. The court reviewed ten website printouts, as well as business directory listings and trade journal ads from third parties. The court's critique of the website evidence concerned the search that had produced it, which, the court concluded, weakened its probative value. *Id.* at 931. Hickory Farms has identified no such search flaws in the present case. Indeed, the significance of Snackmasters' website evidence, as of its non-website evidence, was primarily to show the commonality of use of the terms beef stick and turkey stick on products like those sold by Hickory Farms under those names.

Hickory Farms also cites *AutoZone, Inc. v. Strick*, 466 F. Supp. 2d 1034 (N.D. Ill. 2006), in which Judge Hart found for defendants in a trademark infringement and dilution action brought by the owner of the registered mark AUTOZONE against a defendant who used the terms OIL ZONE and WASH ZONE. In *AutoZone*, however, there was no issue regarding the validity of the AUTOZONE mark and no contention that the term was generic. Judge Hart addressed the Internet evidence in relation to plaintiff's proffer of twenty-two websites that used the term "zone," concluding that the evidence did not reflect the extensiveness of the use of the

10

term. *Id.* at 1043. In the present case, however, Snackmasters' evidence of competitors' uses concerned the same phrase cited by Hickory Farms to sell similar products, not (as in *AutoZone*) the use of related phrases.

Hickory Farms also directs the Court to other authority discounting the reliability of Internet evidence. *See Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877 (N.D. Ill. 2005) (citing *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000)). It also argues that in *Energy Services Air Conditioning & Heating Co., Inc. v. Nicor, Inc.*, No. 97 C 373, 1997 WL 790725, (N.D. Ill. Dec. 22, 1997), Judge Holderman denied summary judgment even in the face of voluminous exhibits using the phrase at issue. Though these cases do not represent an intervening change in the law, as is necessary for reconsideration, the Court will address Hickory Farms' concerns.

In *Monotype*, plaintiffs sued defendant for copyright and trademark infringement and violation of the Digital Millennium Copyright Act. Judge St. Eve granted defendant's motion for summary judgment on the claims of trademark and copyright infringement and concluded, after a bench trial, that the defendant was not liable on the plaintiffs' remaining claims. At trial, plaintiffs attempted to offer, as proof of infringement, material printed from the Internet. They offered no further authentication of the printouts other than a statement by the person who had printed them out. Judge St. Eve found that the website printouts were inadmissible hearsay and admitted them only to show that the material in the exhibits was in fact displayed on the websites. *Id.* at 884-85, 885 n.6. In short, the court's concern was with use of website evidence to prove infringement, which it did not do, not with whether the printouts reliably showed what was displayed on the Internet, which is the primary emphasis that Snackmasters placed on its

website evidence in this case.

In citing *United States v. Jackson*, the court in *Monotype* noted that the Seventh Circuit cautions courts to scrutinize closely printouts from websites for reliability. *Monotype*, 376 F. Supp. 2d at 885 n.6 (citing *United States v. Jackson*, 208 F.3d at 637). But what *Monotype* and *Jackson* made clear about evidence from the Internet is not that it stands for "nil," but that it must be scrutinized carefully.[4] This Court did so with Snackmasters' evidence, finding that it was illustrative of widespread use of the terms beef stick and turkey stick for products similar to those that Hickory Farms sells under those names.

The decision in *Energy Services* does not support the weight that Hickory Farms seeks to place on it. In that case, Judge Holderman found that though the cited articles, reports, decisions, and statutes all used the phrase at issue, the meanings applied to the phrase varied throughout the exhibits. *See Energy Services*, 1997 WL 790725, at *5-6. The evidence Snackmasters presented, by contrast, reflects that the other sellers attached the same meaning to the terms beef stick and turkey stick: as representing a product consisting of meat that is pre-cooked and stuffed into an elongated collagen casing, to create a product in the form of a stick.

In sum, the Court did not misunderstand or give improper consideration to the website evidence cited by Snackmasters.

---

[4] Further, Hickory Farms' argument that websites displaying beef sticks and turkey sticks for sale should be completely discounted by the Court because that market cannot be measured is questionable. Hickory Farms' contention is belied not only by the realities of the marketplace where companies like Amazon.com and others operate profitable businesses solely from Internet traffic, but also by Hickory Farms' own affiant and E-Commerce Merchandising Manager, Amber Yeray. *See* Pl. Ex. 12. Yeray explained that Hickory Farms extensively promotes its beef and turkey sticks on the Hickory Farms website and has done so "since the advent of an available market on the Internet in approximately 1996." *Id.*

Hickory Farms also makes reference to deposition testimony that it says reflects ignorance by Snackmasters' President's regarding third party uses of the terms at issue. Hickory Farms argues that if defendant's own officers are unaware of third party uses, then those uses cannot have much significance. The Court takes issue with Hickory Farms' characterization of the deposition testimony. Snackmasters' President, James Rekoutis, testified that he was aware of certain third party uses. *See* Pl. Ex. 13 at 131, 134, 136, 138-39. The fact that he was not completely aware of the full extent of such uses is not a basis to disregard Snackmasters' evidence entirely.

Finally, the Court would have reached the same conclusion on Snackmasters' summary judgment motion even without consideration of the website uses that Snackmasters offered. Hickory Farms has vigorously disputed Snackmasters' characterization of the terms "beef stick" and "turkey stick" as generic; presumably, Hickory Farms' contention is that the terms are descriptive terms properly protected by trademark law because they have acquired distinctiveness – in trademark lingo, because they have "secondary meaning."

As the Seventh Circuit has described it, a generic term is one that is the "common descriptive name" for a product. *See Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 487 (7th Cir. 1982). "A generic term is one that refers . . . to the genus of which the particular product is a species." *Id.*; *see also, e.g., Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986) ("Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species."); *Mil-Mar*, 75 F.3d at 1157 (drawing a distinction similar to that in *Liquid Controls*). Perhaps because the definition of genericness incorporates an element of descriptiveness, the line

between descriptive terms and generic terms can be, in some cases, a bit fuzzy. *See* 2 McCarthy, *supra* § 12:20 at 12-77 - 12-78.

In this case, however, the line was not fuzzy. Hickory Farms offered no competent evidence that these terms serve as the identifier of the source of the products at issue. And as noted in the Court's ruling, when Hickory Farms sought to register the terms "beef stick" and "turkey stick," it disclaimed the words "beef" and "turkey" because they were generic. And as the Court further discussed, using these generic terms in combination with the word "stick" does not give Hickory Farms a protectable trademark. "Under settled trademark law if the components of a trade name are common descriptive terms, a combination of such terms retains that quality." *Nat'l Conf. of Bar Examiners*, 692 F.3d at 488. Though this Court took to heart the admonition that "[w]ords which could not individually become a trademark may become one when taken together," *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 379 (7th Cir. 1976); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 171 (7th Cir. 1996), in this case the composite term is "nothing more than the sum of the parts." *Liquid Controls*, 802 F.3d at 938. The words used by Hickory Farms and others, taken together, identify what the product is, not who makes or sells it – at least, Hickory Farms offered no evidence from which a jury reasonably could find otherwise.

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for reconsideration [docket no. 115]. The date for plaintiff's response to defendant's motion for attorney's fees is extended to June 4, 2007, and the date for defendant's reply is extended to June 18, 2007. Plaintiff is directed to respond to defendant's bill of costs by June 11, 2007; defendant is directed

to reply to plaintiff's response by June 18, 2007.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   May 29, 2007