**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HICKORY FARMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05 C 4541** |
| | ) | |
| **SNACKMASTERS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Hickory Farms, Inc., owner of the trademarks "Beef Stick" and "Turkey Stick," sued

Snackmasters, Inc. for trademark infringement, unfair competition, and dilution under the

Lanham Act, 15 U.S.C. §§ 1114, 1125(a) & 1125(c), and also asserted parallel state law claims

arising out of Snackmasters' use of these terms for its products. Snackmasters counterclaimed

for a declaratory judgment that both marks are generic and for cancellation of the registered

"Beef Stick" trademark. The Court granted Snackmasters' motion for summary judgment,

concluded that "Beef Stick" and "Turkey Stick" are generic terms, and directed the cancellation

of Hickory Farms' "Beef Stick" registration. *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F.

Supp. 2d 789 (N.D. Ill. 2007). The Court thereafter denied Hickory Farms' motion for

reconsideration. *Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F. Supp. 2d 716 (N.D. Ill.

2007). It then granted Snackmasters' motion for attorney's fees pursuant to the Lanham Act, 15

U.S.C. § 1117(a), which allows the imposition of reasonable attorney's fees to the prevailing

party in "exceptional cases."

Snackmasters has submitted a fee petition seeking $286,748.25 in fees, $8,910.26 in non-taxable expenses, $21,956.14 in pre-judgment interest, and $38,339.20 in fees and costs relating to work on the fee petition. Hickory Farms objects to certain aspects of the petition and asks the Court to reduce Snackmasters' fee award by $63,129.50 (to a total of $223,618.75) and the cost award by $2,829.81 (to $3,090.35). In the alternative, Hickory Farms asks the Court to disallow Snackmasters' fee award in its entirety or, at minimum, to disallow fees claimed in connection with preparation of the fee petition. For the reasons set forth below, the Court awards Snackmasters $281,959.50 in attorney's fees and related non-taxable expenses of $8,910.26; an additional $37,757.93 for fees incurred in connection with this fee petition; and pre-judgment interest of $25,956.14.

## I.     Background

The facts of this case are set forth in the Court's May 29, 2007 Memorandum Opinion and Order granting Snackmasters' motion for summary judgment. The Court assumes familiarity with this and its other prior rulings in this case and restates only those salient details of the litigation that bear on the parties' dispute over attorney's fees.

Hickory Farms and Snackmasters both sell meat products under the names "Beef Stick" and "Turkey Stick." In February 2005, Snackmasters received a cease and desist demand from Hickory Farms objecting to Snackmasters' use of these product descriptors. Hickory Farms then owned, in addition to its registered "Beef Stick" mark, a lapsed registration for the mark "Hickory Farms Turkey Stick." When Hickory Farms attempted to renew this lapsed registration, Snackmasters filed an opposition with the Patent and Trademark Office ("PTO"), as a result of which the PTO did not re-register the mark. At the same time, Snackmasters filed

with the PTO a petition to cancel Hickory Farms' "Beef Stick" mark. Snackmasters served

discovery in both administrative proceedings, with the aim of establishing that the terms at issue

were generic. Hickory Farms sought to suspend the administrative proceeding when it filed its

complaint in this Court.

In March 2007, the Court granted Snackmasters' motion for summary judgment on all

counts of Hickory Farms' complaint and Snackmasters' counterclaim. Hickory Farms appealed

the Court's ruling to the U.S. Court of Appeals for the Seventh Circuit. Pursuant to Federal Rule

of Appellate Procedure 33 and the corresponding Seventh Circuit rule, the parties have since

engaged in talks, under the auspices of the Seventh Circuit's mediators, aimed at narrowing the

issues for appeal and at reaching a settlement.

On September 19, 2007, the Court granted Snackmasters' motion for attorney's fees and

denied as moot a related motion for sanctions under Federal Rule of Civil Procedure 11. In so

ruling, the Court determined that Hickory Farms' lawsuit was lacking in merit, based in part on

Hickory Farms' acquiescence in the use of the product descriptor "Beef Stick" by others over

several years before it brought this lawsuit. The Court considered this acquiescence to be "an

implicit concession that Hickory Farms lacked a protectable right in the term" and a position

directly at odds with the premise of its action against Snackmasters. *Hickory Farms, Inc. v.*

*Snackmasters, Inc.*, Case No. 05 C 4541, Order of Sept. 17, 2007 at 2.

When the Court granted Snackmasters' motion for attorney's fees, it directed the parties

to comply with the provisions of Local Rule 54.3 governing disclosures and submission of a joint

statement and fee petition. Although Hickory Farms appears not to have made all the disclosures

required by the rule, the parties have submitted a joint statement and have briefed the issues on

which they disagree.

## II.     Discussion

The starting point for attorney's fee calculations is the so-called "lodestar" amount, which is the product of the number of billable hours reasonably expended on the litigation and a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Bankston v. State of Ill.*, 60 F.3d 1249, 1255-56 (7th Cir. 1995). The district court must "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Hensley*, 461 U.S. at 434. *Hensley* requires a petitioner for fees to exercise "billing judgment," meaning that the petitioner must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* The district court may then increase or decrease the lodestar amount according to various factors, notably the degree of success achieved by the petitioner in the underlying litigation. *Id.* at 436.

Hickory Farms does not object to the hourly rates billed by Snackmasters' counsel. LR 54.3 Joint Statement ¶ 3. Rather, Hickory Farms objects to certain of the attorney hours for which Snackmasters seeks reimbursement.

### A.     Fees incurred in TTAB proceedings

Hickory Farms objects to fees of $7,971.25 and expenses of $925.27 reflecting work by Snackmasters' California counsel, R. Michael West, his associate Katherine Straight, and a paralegal employed by West on pre-litigation correspondence and administrative proceedings before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("the TTAB proceedings"). Hickory Farms argues that because the TTAB proceedings were initiated

by Snackmasters, and because no statute expressly authorizes the award of attorney's fees in administrative proceedings before the TTAB, these fees and associated expenses are not compensable in this case. Hickory Farms also argues that because Snackmasters chose voluntarily to pursue an administrative proceeding rather than litigate in federal court, its attorney's fees incurred in that proceeding should not be compensable. Finally, Hickory Farms argues that Snackmasters' lawyers' "researching and briefing on issues of the genericness of [Hickory Farms'] trademarks should have been [completed] before [the TTAB] proceedings were initiated . . . . and such work, not recoverable as attorneys' fees in that venue, should not be recoverable now . . . for essentially the same duplicated work." Hickory Farms Opp. Br. at 9.

Snackmasters counters that an award of fees for work done in connection with an administrative proceeding is a case-specific matter for the Court's discretion. It acknowledges that 15 U.S.C. § 1117(a) is silent on the question of fees for what it calls "related" TTAB proceedings but suggests that this silence does not foreclose the possibility of a fee award. Snackmasters' argument relies on 35 U.S.C. § 285, a similar fee award provision for patent-infringement suits, and *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565 (Fed. Cir. 1998), in which the Federal Circuit held that a prevailing defendant was entitled to attorney's fees incurred in proceedings before the Patent and Trademark Office ("PTO") and the Board of Patent Appeals and Interferences. Snackmasters appears to argue that its filing of administrative proceedings is analogous to the forced participation of the defendant in *PPG Industries* in reissue proceedings before the PTO. It contends that because a registration for Hickory Farms' "Turkey Stick" would have issued, "entitling Hickory Farms to all the presumptions accorded a federal registration," and because Hickory Farms had already sent it a

cease and desist demand, "Snackmasters as a practical matter had no option but to file the opposition" in the TTAB—and, as "a necessary adjunct," its petition to cancel the "Beef Stick" trademark. Snackmasters Fee Pet. at 11-12.

Snackmasters does not argue outright that the TTAB proceedings were mandatory. Rather, it contends that it satisfies the test of *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234 (1985), for the award of fees stemming from non-mandatory, non-judicial proceedings because it can show that the work product generated for the TTAB proceedings was both useful and of a type ordinarily necessary in the litigation. Notably, Snackmasters contends that the evidence of third party use gathered for the TTAB proceedings was central to its summary judgment submission and that the "counterclaims on which it prevailed essentially are a continuation of the [TTAB] proceedings." Snackmasters Fee Pet. at 12.

Hickory Farms effectively concedes this last point when it contends that Snackmasters' lawyers' work on the genericness issue for the TTAB proceedings "should not be recoverable now . . . for essentially the same duplicated work." Hickory Farms Opp. Br. at 9. That is, Hickory Farms in effect acknowledges that research on genericness bore directly on this litigation. The Court agrees and determines that Snackmasters has met *Webb*'s requirement that the work done in connection with the non-mandatory, non-judicial proceedings be both useful and of a type ordinarily necessary to the litigation. For this reason, the Court will award Snackmasters the $7,971.25 in fees and $925.57 in expenses stemming from the TTAB proceedings.

### B.   Fees incurred for Internet research

Hickory Farms objects to fees of $5,850.75, reflecting hours spent on Internet research by West, Snackmasters' Chicago counsel Susan Smart, Smart's partner John Bostjancich, and paralegals employed by both firms. Hickory Farms argues that the results of this research are unreliable. Hickory Farms also points to the Court's statement in its opinion granting Snackmasters' summary judgment motion that it "would have reached the same conclusion . . . even without consideration of the website uses that Snackmasters offered" to suggest that the Court did not rely on this evidence. Hickory Farms further contends the research was "mechanical," "essentially clerical in nature" and "easily delegable to non-professional assistance." Hickory Farms Opp. Br. at 9-10. Accordingly, it argues, it is inappropriate to charge an attorney's or paralegal's time for this work.

Snackmasters responds that the Internet research generated evidence of widespread third party use of the terms "Beef Stick" and "Turkey Stick" to sell products and that the relevance of this to the genericness issue is undisputed. Moreover, Hickory Farms authenticated these materials in response to Snackmasters' requests for admissions, and it also went so far as to send out dozens of cease and desist letters to entities responsible for some of these websites, purportedly on the basis of information brought to its attention for the first time by Snackmasters. Snackmasters also asserts that "the identification of evidence establishing the generic nature of the terms at issue was not a purely mechanical task and required attorney input." Snackmasters Reply Br. at 6. Indeed, it is more efficient, Snackmasters argues, for an attorney simply to print a website identified in this research process than to delegate that discrete task to someone else. Snackmasters also notes that Hickory Farms' own lead attorney did Internet research to prepare

its response to the summary judgment motion, suggesting that Hickory Farms did not necessarily regard this evidence as unreliable.

The Court addressed a variant of Hickory Farms' argument about the reliability of Internet evidence when it denied Hickory Farms' motion to reconsider. *Hickory Farms*, 500 F. Supp. 2d at 801-02. The Court distinguished several cases from this district cited by Hickory Farms, noting, among other differences, that those courts' concerns about Internet evidence related to the search terms used to generate it, a lack of authentication that might have established infringement, and inconsistency in the meaning of the phrase at issue as it was used on various Internet websites. *Id.* Therefore, none of these cases stood squarely for the rule Hickory Farms sought to draw from them and apply to this case: namely, that Snackmasters' Internet evidence of third party use was worthless because Internet evidence is generally questionable.

Snackmasters' Internet evidence was meant to show that the terms at issue were widely used in the marketplace to sell products like those sold by Hickory Farms under those names. There was no contention that these websites did not reliably reflect what was found on the Internet or that their originators were not who they appeared to be. The Court's own close scrutiny of the Internet-derived evidence—required by *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000)—led it to conclude that the evidence "was illustrative of widespread use of the terms beef stick and turkey stick for products similar to those that Hickory Farms sells under those names." *Hickory Farms*, 500 F. Supp. 2d at 802.

For these reasons, the Court rejects Hickory Farms' argument here that fees associated with the Internet research are not compensable because the results of the research were "unuseful and unreliable." Hickory Farms Opp. Br. at 10. In addition, Hickory Farms' assertion that "the

Court ha[s] stated [the Internet-derived materials] were not relied upon," Joint Statement ¶ 4(b), misses the point of the Court's statement that it "would have reached the same conclusion even without consideration of the website uses that Snackmasters offered." What the Court quite obviously meant by that is that there was an alternative, sufficient basis for the Court's conclusion that the terms were generic, not that it did not consider the Internet evidence.

The Court also agrees with Snackmasters' argument that its Internet research into third party use required attorney input. The premise of Hickory Farms' argument on this point is that both searching and downloading are "mechanical" activities. That premise is flawed. To be sure, downloading or printing pre-identified materials from the Internet is mechanical and therefore can be considered clerical work. Searches to identify these materials, on the other hand, require the searcher to understand the legal questions at stake and the kind of evidence that will support or weaken a legal position—in other words, to do work that is more legal than clerical. This is true even when, as here, the search criteria are simple and direct. Hickory Farms oversimplifies the nature of this work and, in the process, glosses over its legal dimension. The Court is not persuaded.

For these reasons, the fees of $5,850.75 for Internet research are properly compensable, and the Court will award them to Snackmasters.

### C.      Fees incurred in preparation for Rule 30(b)(6) depositions

Hickory Farms next objects to fees of $1,206.25, reflecting hours spent by West, Smart, and Bostjancich on Rule 30(b)(6) notices of deposition of Hickory Farms personnel and discovery correspondence. Hickory Farms argues principally that because the depositions never

took place, fees that Snackmasters incurred in preparation for them "had absolutely nothing to do with the outcome of this case" and are not compensable. Hickory Farms Opp. Br. at 14.

Snackmasters argues that its preparation for depositions and other discovery-related work was necessary because at the time the work was performed, the Court had imposed a discovery cut-off date (later vacated to allow Snackmasters to pursue a summary judgment motion). Snackmasters also blames Hickory Farms for the depositions' non-occurrence in the first instance—Hickory Farms canceled the depositions at the last minute, it contends, and by the time they were rescheduled Snackmasters had turned its attention to its summary judgment motion.

This discovery-related work that Snackmasters' counsel performed was reasonable and therefore compensable. Attorneys' work need not play a direct role in the outcome of the litigation, or even to have formally played any role at all, to be compensable. *See Patterson v. Aiken*, 841 F.2d 386, 387-88 (11th Cir. 1988) (upholding assessment of roughly $5,000 in attorney's fees under Rule 11 for preparation of an answer that defendant never actually filed); *cf. Pascuiti v. N.Y. Yankees*, 108 F. Supp. 2d 258, 268 (S.D.N.Y. 2000) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998)) (noting the "general principle that a party should not be compensated for motions that were never filed," but finding that half the hours spent on a never-filed summary judgment motion whose underlying theory "played a role in this litigation" were nonetheless compensable). *See also Nanetti v. Univ. of Ill. at Chicago*, 994 F.2d 1416, 1419 (7th Cir. 1991) ("[O]ur precedents . . . clearly state that when time is spent jointly preparing two distinct claims, the fact that one claim produces no recovery will not deprive the plaintiff of every hour spent in joint preparation."). In short, the applicable rule does not foreclose recovery for attorney time spent on work product that does not ultimately see the light of day.

Hickory Farms' argument does not go beyond its assertion that the aborted depositions had no bearing on the outcome of the case. The Court rejects this argument and determines that, in light of the circumstances in which the work was performed, it was entirely reasonable. Indeed, it likely would have been unreasonable for Snackmasters' counsel *not* to attempt to conduct depositions and other discovery related work before the Court vacated the discovery cut-off date. Thus, the discovery-related work by Snackmasters' counsel is fully compensable and the Court will award Snackmasters the $1,206.25 in fees it seeks.

**D.  Fees incurred in connection with Seventh Circuit mediation**

Hickory Farms also objects to fees of $4,788.75 incurred by Snackmasters in connection with settlement talks under the auspices of the Seventh Circuit mediation program. Hickory Farms argues that these talks are not part of the proceedings in this Court but instead relate to its pending appeal from the Court's entry of summary judgment for Snackmasters, which is a separate legal proceeding.

Snackmasters argues that "the focus of the settlement talks has been on attempts to resolve Snackmasters' claim for attorney fees." Snackmasters Reply at 8. Thus, Snackmasters argues, Hickory Farms' contention that the two proceedings are unrelated is mistaken, and the time it has spent in settlement talks overseen by the Seventh Circuit is fully compensable.

The Court agrees with Hickory Farms that its appeal currently pending before the Seventh Circuit is a separate proceeding, in connection with which this Court cannot now award attorney's fees. The Court notes that it is hardly surprising that the settlement talks have focused on the issue of attorney's fees: the aim of these talks is to reach an agreement that will dispose of

the entire case, and a mediator naturally would emphasize the risk Hickory Farms faces from an attorney's fee award by this Court. The use of the fee issue as "leverage" in those settlement talks does not mean that the two proceedings are so related that Snackmasters may recover amounts expended in connection with the appeal.

The Court therefore declines to award Snackmasters the $4,788.75 it seeks for its lawyers' work on the settlement talks mediated by the Seventh Circuit.

### E.     "Block billing"

Hickory Farms objects to what it calls "block billing" by Snackmasters' counsel on sixteen days during the litigation, for which Snackmasters seeks fees totaling $45,000. Hickory Farms contends that Snackmasters' attorneys have admitted they lack contemporaneous records of these billing entries and have had to recreate what details there are from memory—and that Snackmasters now seeks to charge for time spent on that mental reconstruction. Hickory Farms also says these billing entries, which are part of Snackmasters' fee petition, lack detail and may therefore conceal "commingled" fees to which Hickory Farms independently objects (for example, for Internet research and work on the TTAB proceedings). Hickory Farms Opp. Br. at 13.

Snackmasters argues that all of the contested entries relate to work on its summary judgment papers. It contends that its billing need not break down into further detail than that what work was done on which dates (i.e., it need not specify which segments of its brief, Local Rule 56.1 statements, exhibits, or reply brief were prepared when). Snackmasters also asserts that no billing entries have been altered or reconstructed, mentally or otherwise. Rather, it says,

Snackmasters' counsel offered to provide their counterparts more detail about dates on which they worked on specific summary judgment papers, though not from memory, when Hickory Farms first voiced its objection in talks about the parties' Local Rule 54.3 statement. According to Snackmasters, Hickory Farms first asked it to "hold off" on providing additional detail and then said that no new information could change its position. Snackmasters also rejects Hickory Farms' claim of disguised billing for the TTAB proceedings, which had been suspended for more than a year on the dates in question. Finally, Snackmasters notes that the result in *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117 (N.D. Ill. 2006), the case on which Hickory Farms relies for its block billing assertion, favors Snackmasters. In that case, the court resolved the problem of vague billing entries submitted by the party seeking attorney's fees by awarding it the amount that its opponent had spent on the relevant phase of the litigation. *Id.* at 1126-27. In this case, Snackmasters notes, Hickory Farms spent much more than Snackmasters did on the summary judgment phase—$118,000 against $45,000. Therefore, even if there is block billing on its side, Snackmasters suggests, the *Bretford* approach would give it the full amount of fees it seeks.

The problem of block billing is succinctly stated in *Bretford*: "when the [attorney] time records do not describe tasks with particularity, and do not reveal the amount of time claimed to have been spent on a particular task, the judge is in no position to make a reasonable estimate of the amount of time that should have been required." *Bretford*, 421 F. Supp. 2d at 1119. "[A] fee applicant must show the time spent on specific tasks rather than simply the total time spent on a bundle of tasks." *Id.* (citing *Tomazzoli v. Sheedy*, 804 F.2d 93 (7th Cir. 1986)). The Court is satisfied that the preparation of Snackmasters' summary judgment materials is a sufficiently

specific and unitary task that it need not be broken down further in Snackmasters' billing records. *See Simmons v. New York City Transit Auth.*, No. 02-1575, 2008 WL 630060, *6 (E.D.N.Y. March 5, 2008) (finding that attorney's grouping of "individual, but related tasks, into single billing entries" was not block billing because "the individual tasks grouped together were performed in connection with the same end product."). The Court has not had to "wade through . . . voluminous time records to rescue the compensable time from the sea of non-compensable hours." *In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987). In addition, the task of preparing Snackmasters' successful summary judgment motion and supporting materials is obviously one for which Snackmasters may recover attorney's fees. *Cf. id.* (noting bankruptcy trustee's failure to separate time devoted to distinct appeals, for some of which no award of attorney's fees was available, in fee petition). Finally, there is no vagueness problem. Hickory Farms does not contest that Snackmasters' counsel were focused on summary judgment materials on the dates of the challenged entries. This context supports the Court's determination that the challenged fees are reasonable. *See Milwaukee Deputy Sheriffs Ass'n v. Clarke*, No. 06-602, 2008 WL 337335, *3 (E.D. Wis. Feb. 5, 2008) (citing *Berberna v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985)) (determining that counsel's work on summary judgment brief on certain date was sufficient context to render hours billed for "research" on that date reasonable and therefore compensable).

Moreover, given the disparity in the fees charged to the parties by their respective counsels in connection with the summary judgment motion—Hickory Farms' counsel billed well over twice the amount Snackmasters' did[1]—the Court is satisfied that the $45,000 Snackmasters

---

[1] Snackmasters estimates that Ladas & Parry charged Hickory Farms $118,000 for preparing its opposition to Snackmasters' motion for summary judgment, against the $45,000 Snackmasters'

seeks in its fee petition is reasonable.

The Court also rejects as unsupported Hickory Farms' assertion that Snackmasters' counsel altered billing records, whether "exclusively from memory" or otherwise. Hickory Farms Opp. Br. at 14. As a result, the claim that Snackmasters now seeks to charge for mental reconstruction (or any other form of altering of billing records) necessarily fails. Likewise, the Court rejects Hickory Farms' assertion that the contested billing entries may reflect "commingled" billing for work Hickory Farms argues is otherwise not compensable. First, as the Court's discussions of the Internet evidence and TTAB proceedings above indicates, the Court does not find Hickory Farms' objections to that work persuasive. Therefore, even if that work were somehow invisibly bundled into the challenged billing entries, it would not necessarily undermine the reasonableness of any part of the challenged entries. Second, the Court agrees that Snackmasters would not have smuggled work on the TTAB proceedings, long since suspended at the time of the challenged billing entries, into any of these entries.

The Court therefore will award Snackmasters the full $45,000 it seeks in connection with the summary judgment motion.

### F. Pre-judgment interest

Hickory Farms next objects to $21,956.14 in pre-judgment interest sought by Snackmasters. Snackmasters financed its dispute with Hickory Farms largely through a bank loan; Hickory Farms' core argument is that the pre-judgment interest Snackmasters now seeks

---

counsel billed for the corresponding work. Snackmasters' estimate of Ladas & Parry's fees covers only those charges incurred after the Court denied Hickory Farms' Rule 56(f) motion, up to the filing of Hickory Farms' opposition. This figure is consistent with the Court's own review of Ladas & Parry's billing records submitted as an exhibit to the fee petition.

represents loan finance charges that are not compensable. Hickory Farms also objects that it should not have to pay interest on a loan that Snackmasters used to pay for the TTAB proceedings, because, it insists, no recovery of fees stemming from those proceedings is allowed. Hickory Farms calls Snackmasters' loan "mysterious" and suggests rhetorically that it may have been used for other business purposes in addition financing this litigation, such that recovery of interest outlays would be unfair. Hickory Farms Opp. Br. at 6. Hickory Farms also rejects Snackmasters' argument that pre-judgment interest is presumptively available in Lanham Act cases. The Seventh Circuit case on which Snackmasters relies, *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989), covers only "victims of federal law violations," not successful defendants, Hickory Farms asserts.

Snackmasters argues that the rule of *Gorenstein* covers defendants in its position, citing to the legislative history of 15 U.S.C. § 1117(a) to bolster its argument that Congress had the interests of parties forced to defend meritless suits in mind when it adopted the Lanham Act's fee-shifting provision. Snackmasters also rejects Hickory Farms' assertion that it is trying to pass on the interest charges associated with business outlays unrelated to this litigation, noting that it has been so conservative as to separate out the interest on attorney's fee payments it has actually made (minus the fees associated with its withdrawn motion to transfer venue) and to exclude from its interest calculation attorney invoices it has not yet paid.

The Court agrees with Snackmasters' critique of Hickory Farms' interpretation of *Gorenstein*. The argument that *Gorenstein* does not apply because Snackmasters is a prevailing defendant and not a "victim" of any violation is overly formalistic and ignores the mirror-image functions of 15 U.S.C. § 1117(a): making prevailing plaintiffs whole and protecting prevailing

16

defendants from meritless suits. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 524 (D.C. Cir. 1985) (citing S. Rep. No. 93-1400, at 5-6 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7132, 7136). There is no reason to conclude that pre-judgment interest is not presumptively available in this case simply because Snackmasters was a defendant and not a plaintiff who claimed infringement of a trademark.

Similarly, Hickory Farms' argument that no award of pre-judgment interest is authorized in this case collides with the principle that the award of pre-judgment interest under 15 U.S.C. § 1117(a) lies firmly within the district court's equitable discretion.[2] *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1247 n.18 (7th Cir. 1995) (citing *Gorenstein*, 874 F.2d at 436) ("In *Gorenstein*, this court imbued equitable principles into the prejudgment interest calculus."). District courts have the same equitable discretion under another "exceptional cases" attorney's fee statute, 35 U.S.C. § 285, which governs in the patent-law context. *E.g., Mathis v. Spears*, 857 F.2d 749, 760-61 (Fed. Cir. 1988). In *Mathis*, the Federal Circuit upheld the award of pre-judgment interest on attorney's fees under section 285 to a prevailing defendant in a frivolous patent infringement suit. *Id.*; *see also Gardiner v. Gendel*, 727 F. Supp. 2d 799, 805 (E.D.N.Y. 1989) (awarding pre-judgment interest on attorney's fees to defendant under 35 U.S.C. § 285 where "the litigation was conducted in bad faith from beginning to end."). The Court has not found a case in which a prevailing defendant was awarded pre-judgment interest on attorney's fees under 15 U.S.C. § 1117(a). *But compare Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 536 (5th Cir. 2002) (finding district court had not abused its discretion in denying

---

[2] Hickory Farms also argues that pre-judgment interest is not available because no Illinois statute authorizes it in this case. As Snackmasters correctly points out, this argument ignores the fact that the award of pre-judgment interest in Lanham Act cases is a matter of federal common law. *Gorenstein*, 874 F.2d at 436 (collecting authorities).

defendant pre-judgment interest on fees incurred in successful defense of trademark-infringement suit, but not rejecting its availability in principle). Nonetheless, in light of the dual goals of the statute and the instructive precedents under 35 U.S.C. § 285, the Court will apply its equitable discretion to do so here.

Hickory Farms' other arguments are unavailing. Snackmasters is not seeking to recover interest payments on its bank loan; rather, it is seeking an award of pre-judgment interest on its attorney's fees, for which the rate of interest on that loan provides a ready measure. Indeed, as Snackmasters points out, the Seventh Circuit in *Gorenstein* actually endorsed the use of the rate on a party's unsecured loan as a pre-judgment interest benchmark. *Gorenstein*, 847 F.2d at 436-37. As for Hickory Farms' argument that it should not have to pay pre-judgment interest on fees Snackmasters incurred for the TTAB proceedings, Hickory Farms has already conceded that these proceedings satisfy the *Webb* test, and the Court has accordingly awarded Snackmasters the attorney's fees and expenses it incurred in those proceedings. It follows that pre-judgment interest on those fees is also available.

Finally, the Court rejects Hickory Farms' suggestion that Snackmasters is trying to pass on the interest charges associated with business outlays unrelated to its dispute with Hickory Farms. Snackmasters has not asked Hickory Farms to compensate it for interest payments it has made on the bank loan. The bank loan matters, as Snackmasters' counsel's declaration makes clear, only because "[t]he *rates* used for Snackmasters' Pre-judgment Interest Calculation are rates actually charged by Farmers & Merchants Bank," the lender. Snackmasters Fee Pet., Ex. A ¶ 11 (emphasis added). There can be no serious suggestion that Snackmasters is trying to force Hickory Farms to bear the cost of financing business activities unrelated to this dispute, because

Snackmasters is seeking only the product of these rates and the payments it has made to its attorneys—not, as Hickory Farms suggests, flat compensation equal to interest payments Snackmasters has made to Farmers & Merchants Bank.

For these reasons, the Court awards Snackmasters the $21,956.14 in pre-judgment interest it seeks.

### G. West's administrative costs

Hickory Farms objects to what it calls a "totally unexplained and arbitrary surcharge" of four percent charged by West, Snackmasters' California counsel, totaling $2,829.91. Hickory Farms Opp. Br. at 11. Snackmasters responds that West's invoices show that this charge captures West's outlays for long-distance telephone calls, fax transmissions, postage, and photocopying. Because the precise amount of these costs for a given matter are difficult to capture, West adds four percent to his base fee for a given period.

The Court rejects Hickory Farms' characterization of West's surcharge as "totally unexplained." A glance at the exhibits to Snackmasters' fee petition reveals its purpose: the words "Administrative charge (4%) to cover costs such as photocopying, postage, long distance telephone calls and small miscellaneous expenses" are standard on West's billing statements. Recovery for these outlays is not ordinarily problematic. *See Zeigler Coal Co. v. Director, Office of Workers' Compensation Programs*, 326 F.3d 894, 902-03 (7th Cir. 2003) (postage and photocopying charges compensable as part of attorney's fee award); *Burda v. M. Ecker Co*., 2 F.3d 769, 778 (7th Cir. 1993) (citing 28 U.S.C. § 1920) (same); *In re Mullins*, 84 F.3d 1439, 1443 (D.C. Cir. 1996).

Hickory Farms does *not* argue that West's standard surcharge for these items is impermissible because it represents general office overhead not chargeable to the client—and, by extension, not chargeable to an opponent under a fee award. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256, 1260-61 (N.D. Ill. 1993). In any event, a four-percent surcharge strikes the Court as a reasonable approximation of West's photocopying and other costs stemming from his work on Snackmasters' dispute with Hickory Farms. *See Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1379-80 (Fed. Cir. 2006) (law firm charged clients a seven-percent overhead fee for photocopies, telephone, fax, postage, and other expenses). Monitoring and assigning to specific client matters the precise amounts of minor expenses like long-distance charges, postage, and similar outlays are often unlikely to be cost-justified. Thus, the Court takes the view that an estimate—particularly when, as here, the resulting figure is a modest one—is an appropriate device. The goal, after all, is to ensure that all of the outlays associated with a particular legal dispute are recovered by a prevailing party who seeks an award of fees. *See Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) (citing *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987)) ("Out-of-pocket litigation costs are generally recoverable [under 15 U.S.C. § 1117(a)] if they are necessary for the representation of the client.").

For these reasons, the Court will award Snackmasters the $2,829.91 that reflects West's four-percent surcharge.[3]

---

[3] Although the parties' joint statement singles out these costs as "[a]dministrative expenses," the Court understands them to be part of West's attorney's fees and thus part of the total attorney's fees of $286,748.25 that Snackmasters is seeking.

**H.    Fees incurred in connection with this fee petition**

Hickory Farms next objects to Snackmasters' attempt to recover $38,339.20 in fees and costs stemming from work on the parties' Local Rule 54.3 statement, its fee petition and reply brief, and supporting materials.  Hickory Farms contends that a nontrivial part of the work on the fee petition consisted of altering billing statements to avoid the claimed block billing problem.  It also voices suspicion that Snackmasters' request is a "back door" attempt to recover fees for the withdrawn motion to dismiss or transfer venue—that is, it accuses Snackmasters going back on an agreement not to seek fees for this work, reached just before parties filed their joint statement.  Hickory Farms Opp. Br. at 14-15.

Snackmasters observes that Hickory Farms agrees that fees may properly be awarded for work on the fee petition, provided that such an award "must take into account the success which is obtained in connection with the Fee Petition."  Joint Statement ¶ 2.  Snackmasters also attacks as unsupported Hickory Farms' suggestions that Snackmasters is attempting to collect for mental reconstruction of billing statements and for work it has already agreed will not be the basis for a fee request (i.e., the motion to transfer venue).

The Court agrees with Snackmasters that these latter contentions—more properly, suspicions—are wholly unsupported.  The more serious issue is how much Snackmasters should be awarded for work on the fee petition.  There is no question that "an allowance of reasonable fees for presenting a successful fee petition is the only way a fee applicant can be made whole.  If it must absorb the cost of proving the appropriate amount, it will be sacrificing part of the award."  *Bretford*, 421 F. Supp. 2d at 1128.  Moreover, as the parties' agreement in paragraph 2 of their joint statement reflects, the Seventh Circuit has held that the *Hensley* lodestar reduction

principle applies to calculation of fees for litigating fee awards. *In re Burlington Northern, Inc. Empl. Practices Litig.*, 832 F.2d 430 (7th Cir. 1987). Obviously, Snackmasters has been quite successful. *Cf. Bretford*, 421 F. Supp. 2d at 1129 ("[J]ust as the fees themselves are apportioned between successful and unsuccessful claims, the fees for presenting a partially successful fee application should be similarly apportioned."). The Court has denied its request for fees only in connection with its work on the Seventh Circuit mediation process. Accordingly, the Court will subtract from the $38,399.20 Snackmasters seeks for work on the fee petition the percentage of the total award that the fees incurred in the Seventh Circuit-mediated talks represent. The fees of $4,788.75 incurred in these talks are 1.67 percent of the total fees of $286,748.25 that Snackmasters seeks. Subtracting that percentage of $38,399.20 from that same number yields $37,757.93. The Court will award Snackmasters this amount for fees incurred in connection with this fee petition.

## I.     Post-judgment interest

Snackmasters asserts that it is entitled to post-judgment interest on attorney's fees from the date the Court determined that it is entitled to an award of fees—i.e., September 17, 2007. That position misapprehends the legal effect of the Court's September 17 order. That order was not a judgment. More to the point in this context, the order did not set an amount of fees to which Snackmasters is entitled; that step has been left until now. Accordingly, post-judgment interest will only accrue from the date of this decision's entry until the time Hickory Farms tenders payment. *See Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990) (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 662 (7th Cir. 1985)) (interest on

attorney's fees available only from the date that the district court entered an award setting the precise amount of fees, not from the earlier date on which the court determined plaintiff was entitled to fees); *see also Kaiser Aluminum & Chem. Corp. v. Bonjono*, 494 U.S. 827, 835-36 (1990) (quoting *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987) (emphasis added) ("[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the *ascertainment of the damage* and the payment by the defendant.").

**J.    Reasonableness of Snackmasters' total claimed fees**

Hickory Farms contends in its opposition brief—though not in the joint statement—that Snackmasters' claimed costs and fees "are statistically way above normal and typical for this type of action."  Hickory Farms Opp. Br. at 5.  This assertion, for which Hickory Farms draws on data from a 2007 survey of litigation costs published by the American Intellectual Property Law Association ("AIPLA"), appears not to be a "specific dispute" within the meaning of Local Rule 54.3(e)(4)(3) or an argument that bears directly on any one disputed issue within the meaning of Local Rule 54.3(f).  Rather, Hickory Farms' goal appears to be to suggest that Snackmasters' counsel have run up fees out of all proportion to what is typically charged in disputes comparable to the underlying litigation here.

The Court is unpersuaded.  First, it is not clear that Snackmasters' total fees are above average when set against the AIPLA data.  Snackmasters' claimed fees of $286,748.25 are slightly under the AIPLA survey's figure for the mean reported cost of trademark infringement litigation in the Chicago market in which less than $1 million is at issue, which is $288,000 (the

median reported figure for Chicago is $300,000). Hickory Farms suggests that the appropriate

benchmark is lower, citing to a median figure of $255,000 taken from a different table in the

AIPLA survey. This table, however, does not reflect the market or markets for which these

numbers are reported. Hickory Farms submitted only the page of the AIPLA report on which this

table appears (in addition to the survey's cover pages), without any context or explanation. As

the more detailed AIPLA survey table submitted by Snackmasters makes clear, the legal market

in which the litigation takes place is a significant variable. The data in Hickory Farms' preferred

table may be aggregate data, or it may be data for some individual market; based on Hickory

Farms' submission, the Court cannot tell. For these reasons, the Court cannot say that the

$255,000 figure is the appropriate benchmark.

Second, the Court is unpersuaded by Hickory Farms' assertion that this suit was, in

essence, a (typically lower-cost) opposition or cancellation procedure. Although the outcome

was the cancellation of Hickory Farms' trademark, Snackmasters justifiably began preparation

for full-scale litigation involving multiple Lanham Act and state-law claims asserted by Hickory

Farms.

Third, as Snackmasters points out, Hickory Farms' own counsel may have charged it as

much as $450,000. The billing records it has provided show Hickory Farms was billed more

than $357,000. As the Court's discussion of summary judgment-related fees above makes clear,

Hickory Farms' counsel billed its client for significantly more than did Snackmasters' at key

phases of this litigation. As a result, Hickory Farms (the party that filed the suit) is in no position

to suggest Snackmasters' lawyers have engaged in runaway billing. If, as Hickory Farms asserts,

Snackmasters' claimed fees are grossly excessive, the same could be said of Hickory Farms' own

attorneys. The Court has no basis to conclude that either proposition is true.

**III.    Conclusion**

For the reasons stated above, the Court grants Snackmasters' motion to set fees and costs [docket no. 160] and awards Snackmasters $281,959.50 in fees and related non-taxable expenses of $8,910.26; an additional $37,757.93 for fees incurred in connection with this fee petition; and pre-judgment interest of $25,956.14.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:    April 2, 2007